## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

**FEDERAL DEPOSIT INSURANCE
CORPORATION**, as Receiver for Florida
Community Bank,

                  Plaintiff,

v.                                          **Case No. 2:12-cv-148-FtM-99DNF**

**STEPHEN L. PRICE, BEAUFORD DAVIDSON,
PATRICK LANGFORD, JON R. OLLIFF, D.D.S.,
JAMES O'QUINN, BERNARD RASMUSSEN
and DANIEL ROSBOUGH,**

                  Defendants.

_____/

## <u>PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS</u>

Plaintiff, Federal Deposit Insurance Corporation ("FDIC-R"), as Receiver of Florida

Community Bank ("FCB"), files this Response to the Motion to Dismiss (the "Motion") filed

by Defendants BEAUFORD DAVISON, PATRICK LANGFORD, JOHN R. OLLIFF,

D.D.S., JAMES O'QUINN, BERNARD RASMUSSEN, and DANIEL ROSBOUGH

("Defendants").[1]  For the reasons stated herein, the Motion should be denied.[2]

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT IN RESPONSE TO MOTION TO DISMISS

FDIC-R sues one bank officer[3] and the Defendants, six outside directors for damages

caused by failure to adhere to the most basic principles of prudent management of the Bank's

lending functions. Count I alleges negligence under §607.0830, Fla. Stat. Count III alleges

---

[1] Stephen L. Price was the only defendant in Count II. He filed bankruptcy. Only Counts I and III against the Directors remain.

[2] If the Court is inclined to grant Defendants' Motion, FDIC-R respectfully requests it leave to amend, which should be liberally granted. *Thomas v. Farmville Mfg. Co., Inc.*, 705 F.2d 1307 (11th Cir. 1983).

[3] See Footnote 1.

gross negligence under the Financial Institutions Reform, Recovery and Enforcement Act of 1989, 12 U.S.C.A. 1821(k), *et seq.* ("FIRREA").

The Complaint alleges facts demonstrating that Defendants engaged in negligent and grossly negligent lending practices, failed to implement systems specifically required of them by regulatory authorities, failed to heed clear regulatory warnings and directives, failed to implement or exercise any meaningful oversight of the loan process, and failed to conduct any meaningful loan review.  Rather than carrying out the most basic duty of directors, to control management, they allowed themselves to be dominated by Stephen Price. This led to their pursuing a growth strategy marked by an overconcentration in complex loans outside of FCB's market area, without the personnel or systems necessary to underwrite them.  In doing so, they repeatedly ignored warnings by the FDIC and the Florida Office of Financial Regulation (FOFR) to monitor more carefully and adjust FCB's risk profile, improve its credit functions and improve its loan standards.

The Defendants can have no doubt as to the factual basis of FDIC-R's allegations, as they are described in exacting detail.  The Complaint details seven (7) loans ("the Loans"), illustrating numerous systemic failures within FCB.  It details the negligent and grossly negligent deficiencies in the underwriting and management of the Loans.  It further alleges that, as a matter of sound banking industry practice and regulatory experience, the eventual failure of FCB due to the Defendants' persistence in these practices was reasonably foreseeable.  These allegations are not conclusions.  They are ultimate facts that must be taken as true.  The inquiry on motion to dismiss is whether, if taken as true, they ultimately support the legal conclusions of negligence and gross negligence.  They clearly do.

Further, on these facts, and at this stage of the proceedings, Defendants' invocation of the Florida Business Judgment Rule ("BJR"), a matter of affirmative defense, should neither be permitted nor presumed to apply. The BJR requires a fact-intensive inquiry by the Court, and is not a defense to gross negligence. Accordingly, any consideration of Florida's BJR defense, as codified at §607.0831, Fla. Stat., is premature when ruling on a motion to dismiss.

In addition, the allegation in the Complaint that the Board reviewed loan packages presented to them is insufficient to demonstrate that Defendants "followed a rational process for approving these loans," as the Motion alleges. On the contrary, as set forth in the Complaint, these Defendants were aware that the Bank's underwriting policies and staff were insufficient to support the loan portfolio, that more vigorous underwriting was required, and that the appraisal review process was inadequate, but persisted in their course of action. The Complaint alleges that they failed to inform themselves and made "uniformed decisions without meaningful deliberation." Mere lip service to policies is insufficient under Florida law to exculpate a director. It is tantamount to arguing that an incompetent director flipping through loan committee files without informing himself on them would be sufficient to constitute a "rational process for reviewing" the loans.

Finally, FCB's collapse under the stress of a real estate "bubble" does not, as the Motion argues, render the Complaint subject to dismissal. Many peer institutions weathered the storm. Whether Defendants' practices, as alleged in the Complaint, caused this bank to fail is a question for the trier of fact, not for the Court on a motion to dismiss.

## II.   LAW AND ARGUMENT

### A.   Plaintiff Has Met and Exceeded the *Twombley* and *Ashcraft* threshold, and the Rule 12(b)(6) Standard Dictates a Denial of the Motion to Dismiss

"The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the complaint's statement of claim for relief." *Brooks v. Blue Cross Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997)[4]. In ruling on Defendants' Motion, therefore, the scope of the Court's review is limited to the four corners of FDIC-R's Complaint. *Speaker v. U.S. Dep't. of Health and Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). The Court must accept all factual allegations in the Complaint as true and construe them in a light most favorable to FDIC-R. *Id.*

FRCVP 8(a) requires only "a short and plain statement of the claim" that will give the defendant fair notice of what FDIC-R's claim is, and the grounds upon which it rests. *Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1341 (M.D. Fla. 2003). To survive a Rule (12)(b)(6) motion to dismiss, a complaint must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 12(b)(6) does not allow dismissal of a claim even if the court anticipates "actual proof of those facts is impossible;" however, the "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545).

FDIC-R's Complaint leaves no room for speculation regarding the concrete acts and omissions of Defendants which caused the losses to FCB set forth in the Complaint. Contrary to Defendants' assertions that the Complaint fails the *Twombly* test because it

---

[4]A complaint may not be dismissed because the plaintiff's claims do not support the particular legal theory he relies upon, since the court must determine whether the allegations provide for relief on *any* possible theory. *Robertson v. Johnston,* 376 F.2d 43 (5th Cir.1967). The Motion must show, in short, that taking the facts as true, no construction of them will support the cause of action on a dispositive issue of law. *Marshall Cty. Bd. Of Ed. v. Marshall Cty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993). This Motion is viewed with disfavor and is rarely granted. *See e.g., Madison v. Purdy,* 410 F.2d 99, 100 (5th Cir.1969); *International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Service,* 400 F.2d 465, 471 (5th Cir.1968) ( "Dismissal of a claim on the basis of bare-bone pleadings is a precarious disposition with a high mortality rate.").

contains only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" (*Ashcroft* at 678), the Complaint is well-supported by very specific facts detailing at length Defendants' pursuit of ADC and CRE loans, including the Loans and their deficiencies, even after Defendants had been repeatedly warned to curb these loans, adjust FCB's risk profile, improve its credit functions, and improve its loan standards.

The Complaint alleges that each of the Defendants, directors of a bank and entrusted with its financial soundness, was on notice of the deficiencies in the Bank's practices; yet after repeated warnings, failed to curtail continued and ongoing risky loan activity.  Without meaningful deliberation, Defendants unanimously approved the Loans (Compl. ¶¶ 50, 54, 58, 61, and 64), even though this effectively *increased the concentration* of ADC and CRE loans they were specifically warned against.  As directors, Defendants were charged with knowing the Bank's lending authority, and yet they unanimously approved the $25.6 million Arboretum loan, which exceeded Florida's statutory twenty-five percent (25%) lending limit on secured loans (Compl.¶58.b).  Defendants compounded their misconduct regarding initial loan approvals by permitting extensions and renewals despite the loan policy's prohibition against renewing interest-only loans.[5]  Had Defendants acted within the standard of care due in these particular circumstances, they would have refused to rubber-stamp loans that were continually recycled before them for extension after extension.[6]

---

[5] *E.g.*, Lake Eve Development, LLC (Compl. ¶ 50.d.) Bermont Loop, LLC (Compl. ¶ 55.d.) and Eagle Federal, LLC (Compl. ¶ 61.c.).

[6] The loan to Lake Eve Development, LLC had been before this Board since April 2005, and it remained unpaid through successive interest-only renewals for *five years*. (Compl. ¶¶ 50 and 51.d.)  The same is true of the Bermont Loop, LLC loan, a $17.6 million loan which originated in 2005, came up for an interest-only renewal in 2007, and was unanimously extended until 2009 with no requirement of reduction of principal.  (Compl. ¶¶ 55 and 55.d.)

Unlike in *Caremark* and cases Defendants cite, these Defendants did <u>not</u> address or make <u>any</u> attempt to correct the deficiencies and risky concentrations which were at the heart of the FDIC's criticisms until after a Cease and Desist Order was issued on  October 7, 2008. (Compl. ¶ 42).   They were well aware that regulatory authorities had criticized Stephen Price's leadership (Compl. ¶ 80), and that their reliance on his recommendations were contrary to their duties to act in good faith and in the best interests of the Bank.[7]   FDIC-R's Complaint clearly sets forth plausible claims founded on negligence and gross negligence.

**B.     FIRREA Preserves Count I, for Negligence, Based upon Florida's Statutory Standard of Ordinary Care.**

FDIC-R bases its claims on: (1) Florida law, which subjects directors of corporations to liability if they fail to exercise the degree of ordinary care an ordinary prudent person would exercise in similar circumstances (Count I-negligence); and (2) FIRREA, which requires a showing of gross negligence (Count III-gross negligence).

In *Atherton v. FDIC*, 519 U.S. 213, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997), the United States Supreme Court settled the question of whether lawsuits against directors of failed financial institutions were limited to federal claims brought under FIRREA's Section 1821(k) (which sets a gross negligence standard), or whether state law claims based on a lesser level of culpability (failure to use ordinary care) were pre-empted by FIRREA's gross negligence standard.   The Court held that "[s]tate law sets the standard of care for officers and directors of federally insured savings institutions so long as the state standard (such as

---

[7]  As a result of their over-reliance on the bank's President, Mr. Price, the Directors failed to act independently (Compl. ¶ 38) and in an informed manner (Compl. ¶74); and further failed to deliberate in a meaningful way when approving loans (Compl. ¶¶ 81, 93).

simple negligence) is stricter[8] than that of [§ 1821(k)]." *Id.* at 668.  FIRREA, however, sets a

"gross negligence" *floor*, which substitutes a gross negligence standard for state standards

that would require a showing of conduct *more culpable* than gross negligence. *Id.  See also,*

*F.D.I.C. v. Stahl,* 89 F.3d 1510 (11th Cir. 1996).

### C.    Florida Law Imposes an Ordinary Negligence Standard of Care on Directors.

The standard of care that directors must adhere to in Florida is set forth in §607.0830,

Fla. Stat., which provides:

(1) A director shall discharge his or her duties as a director, including his or her duties as a member of a committee:

(a) In good faith;

(b) *With the care an ordinarily prudent person in a like position would exercise under similar circumstances*; and

(c) In a manner he or she reasonable believes to be in the best interests of the corporation.
                    [Text intentionally omitted; emphasis supplied.]

In addition the statute provides:

(4) A director is not acting in good faith if he or she has *knowledge* concerning the matter in question that makes reliance [on officers] otherwise permitted … unwarranted. [Emphasis supplied]

(5) A director is not liable for any action taken as a director, or any failure to take any action, *if he or she performed the duties of his or her office in compliance with this section*.  [Emphasis supplied.]

This section requires directors to utilize ordinary care.   Subsection (5) expressly

absolves the director from liability *only* if he or she acts with due care and in good faith.

This is a simple negligence standard.  If Florida law required a higher threshold of directors,

---

[8] "Stricter" means stricter for the directors; i.e., requiring only proof of a level of negligence, such as simple negligence, that need not rise to the level of gross negligence, in order to hold them liable.

§607.0830 would have no reason to exist.  The director must exercise ordinary care and good faith, and *if he does*, he may then raise the Business Judgment Rule defense codified at §607.0831.  As stated by the court in *Oceancrest Condominium Apartments, Inc. v. Donner*, 504 So. 2d 447, 453 (Fla. 4th DCA 1987), … [A] director accepting the office impliedly agrees and undertakes to give the corporation the benefit of his (or her) powers in the interest of the corporation and the stockholders."  This is consistent with §607.0830.

The Complaint clearly supports a cause of action based upon Defendants' breach of their duties of ordinary care and lack of good faith by alleging that Defendants acted despite knowledge of regulatory warnings against the dangers and unreasonableness inherent in FCB's loan concentrations, underwriting, administration, lack of requisite personnel, and policies.  §607.0830, subsection (4), plainly states that a director is not acting in good faith if her or she has knowledge concerning the matter in question. Accordingly, Defendants are presumed not to have acted in good faith, and may not escape liability under the provisions of 607.0830, subsection (4), and Subsection (5), which conditions exculpation on adherence to a standard of ordinary care.

Defendants' actions in this case are distinguishable from the actions of the board in *Kloha v. Duda*, 246 F.Supp.2d 1237 (M.D. Fla. 2003), because the board of directors in *Duda* had thoroughly reviewed and received input from management in deciding to continue on a more limited basis in an unprofitable area rather than terminate it altogether.  The thorough review and actual exercise of judgment that the *Duda* board conducted is absent in this case, as alleged in the Complaint.

### D. FDIC-R Has Pled Ultimate Facts Which Meet the Definition of Gross Negligence Under The Law of Florida.

In deciding whether or not FDIC-R has alleged sufficient facts amounting to FIRREA's statutory gross negligence standard, the Court will look to state law for its definition. *Resolution Trust Cop. v. Fiala*, 870 F.Supp. 962 (E.D. Mo. 1994). In Florida, the courts initially struggled with defining gross negligence. *Ingram v. Pettit*, 340 So. 2d 922, 924 (Fla. 1976) ("the concept of dividing negligence into degrees (or perhaps, more appropriately, kinds) has been problematic") quoting *Carraway v. Revell*, 116 So. 2d 16, 19 (Fla. 1959) ("[p]erhaps no rule can ever be devised which will definitively separate one from the other"). In response to the difficulty described by the *Ingram* and *Carraway* courts, in 1986, the Florida Legislature codified the definition of gross negligence in §768.72(2)(b), as "conduct … so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct."[9] This language is virtually identical to the Florida Standard Jury Instruction on gross negligence. *Standard Jury Instructions – Civil Cases* (No. 00-2), 797 So.2d 1199, 1202 (Fla. 2001) ("Gross negligence means that the conduct of (name person whose conduct may warrant punitive damages) was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct"). The application of Florida's definition of gross negligence requires the evaluation of "the entire course of conduct of Defendants under all of the circumstances and in the light of all the related factors taken collectively." *BDO Seidman LLP v. Banco Espirito Santo International*, 38 So. 3d 874 (Fla. 3d DCA 2010), quoting *Faircloth v. Hill*, 85 So. 2d 870, 872 (Fla. 1956).

---

[9] §768.72, Pleading in civil actions; claim for punitive damages, was enacted as a part of a comprehensive tort reform legislation, and this particular provision requires that the plaintiff come forward with evidence of gross negligence before permitting a demand for punitive damages.

When viewed in light of Florida's definition of gross negligence, FDIC-R's allegations clearly state a plausible claim. The Complaint describes a course of conduct by Defendants, as bank directors, which was, indeed, so wanting in care under all of the circumstances described in the Complaint that it constituted a conscious disregard for the safety and soundness of FCB: They knowingly <u>grew</u> the portfolio of ADC and CRE loans, even though they had been warned by regulators to curb that growth and overconcentration. They were instructed to improve the Bank's loan functions, and yet knowingly failed to institute system-wide controls in the area of underwriting and loan administration, which would likely have prevented the making of the Loans which later caused the largest losses to the Bank. They failed to inform themselves of the nature and extent of the Bank's exposure to the risk of loss posed by these Loans which expanded beyond the Bank's traditional four-county service area to twenty counties. They did not inform themselves of the capital position of the Bank or the strictures of Florida banking statutes when they approved the $25.6 million Arboretum loan, which exceeded the 25% cap on secured loans. Even after they were informed of regulatory criticisms about Price's leadership and judgment, they consciously ignored those criticisms, abdicated their oversight as directors, and continued to give him overriding authority without Board supervision. These actions and omissions were grossly negligent because they were so wanting in care that it constituted a conscious disregard or indifference to the safety and soundness of FCB.

"Gross negligence" under Florida law has also been held to mean "an act or omission that a reasonable, prudent person would know is likely to result in injury to another;" *Turner v. PCR, Inc.,* 754 So.2d 683 (Fla. 2000), *Florida Dept. of Transp. v. Juliano,* 864 So.2d 11 (Fla. 3d DCA 2003); or "conscious disregard or indifference to the life, safety, or rights of

persons exposed to such conduct." *BDO Seidman, Id*. at 877 (Fla. 3d DCA 2010).  As previously argued, the Complaint alleges that Defendants were on notice from regulatory authorities that persisting in their course of conduct would injure the health and soundness of FCB.   The Complaint alleges specific acts of knowing and conscious disregard or indifference to the interests of FCB, such as ignoring regulatory warnings, persisting in the criticized conduct despite the warnings, and knowingly dispensing with the most rudimentary management practices and safeguards, without regard for the consequences.  The kind of acts and omissions alleged in the Complaint are such that a reasonably prudent person would know are likely to result in injury to another.  These are allegations that, taken as true, legally establish gross negligence.  The disproving of these allegations is for trial.

Indeed, on allegations strikingly similar to those raised against Defendants in this case, courts across the nation have refused to grant dismissal motions attacking the gross negligence counts.  For example, in *FDIC ex. rel. Wheatland Bank v. Spangler*, 836 F. Supp. 2d 778 (N.D. Ill. 2011), the FDIC brought gross negligence claims against the bank's loan committee and   directors, alleging that members of the loan committee accepted loan approval requests with insufficient guarantees and collateral for distressed and underperforming properties, with loan-to-value ratios in contravention of prudent underwriting standards, and with inadequate financial information regarding borrowers and guarantors.  Plaintiff further alleged that all of the bank's inside and outside directors received monthly credit reports showing that the bank rapidly overshot its asset and loan plans soon after its inception, and that all directors received regulatory reports from state and federal regulators warning about the bank's excessive growth rate, high concentration of risky CRE and ADC loans, violations of loan-to-value ratio guidelines, and poor earnings.

Applying Illinois law,[10] the court deemed the allegations sufficient to state gross negligence under 12 USC 1821(k) and denied defendants' motion to dismiss.[11]

Likewise, in *RTC v. Dean*, 854 F. Supp. 626 (D. Ariz. 1994) the RTC's allegations against directors and officers of the failed institution included their continued  approval of speculative loans despite repeated warnings from federal regulators of their risk, and their approval of loans under circumstances where such approvals violated federal and Arizona banking and corporate laws.  These too were found sufficient under Arizona law to state gross negligence sufficient to withstand dismissal.  The RTC further alleged that Defendants failed to inform themselves of critical information about the ability of borrowers to repay and about the speculative real estate projects supporting the major loans they approved.  Again, the court denied defendants' motion to dismiss, finding that "what constitutes a proper performance of the duties of a director is *a question of fact*, which must be determined in each case in view of all the circumstances; the character of the company, the condition of its business, the usual methods of managing such companies, and all other relevant facts taken into consideration."  *Id*. at 639 (emphasis added).

Similarly, an Indiana District Court also sustained gross negligence claims under Indiana law in *RTC v. O'Bear, Overholser, Smith & Huffer*, 840 F. Supp. 1270 (N.D. Ind. 1993). Therein, defendants' alleged failures included: (a) failure to obtain complete and

---

[10] The standard articulated for "gross negligence" under Illinois law was "very great negligence" but something less than willful, wanton and reckless conduct.  *FDIC v. Gravee,* 966 F. Supp. 622, 636 (N.D. Ill. 1997).

[11] Illinois courts have found strikingly similar allegations of gross negligence under 12 USC 1821 (k) sufficient to survive motions to dismiss in the following RTC cases:  *RTC v. Franz*, 909 F. Supp. 1128, 1130 (N.D. Ill. 1995); *RTC v. Keefe*, No. 92-3207, 1993 U.S. Dist. LEXIS 17701, at *2-5 (C.D. Ill. Feb. 19, 1993); *RTC v. Platt*, No. 92-CV-277-WDS, 1992 U.S. Dist. LEXIS 21377 (C.D. Ill. Oct. 23, 1992) *RTC v. O'Connell*, No. 94 C 4186, 1996 U.S. Dist. LEXIS 3999, at *8-9 (N.D. Ill. Mar. 29, 1996); *RTC v. Fortunato*, 94 C 2090, 1994 U.S. Dist. LEXIS 12326, at *9 (N.D. Ill. Aug. 31, 1994).

reliable credit information on the borrowers and guarantors in accordance with the bank's lending policies and safe and sound banking practices; (b) failure to obtain independent appraisals (required by federal regulations) on the projects being relied on for the repayment of loans; (c) failure to obtain accurate and unbiased information on the real estate markets in the areas for which the loans were made; (d) failure to ascertain whether these loans violated the federal loans-to-one-borrower regulations; and (e) failure to hire consultants to provide the board with needed information and guidance about the new type of lending activity. Assuming the allegations to be true, the court held that it could not conclude, beyond doubt, that defendants did not act with "reckless disregard of the consequences," the standard established for gross negligence under Indiana law. *Id.* at 1279.  It therefore denied dismissal under Indiana law, allowing plaintiff to proceed on gross negligence under 12 U.S.C. §1821 (k).

Because the standard for gross negligence in each of these cases equals or exceeds Florida's "conscious disregard" standard, as well as the test of whether a reasonable, prudent person would know the conduct was likely to result in injury to another, these authorities further compel FDIC-R's claims to proceed in this case.

### E.   Application of the Business Judgment Rule Should Not Be Resolved In A Motion to Dismiss.

FDIC-R's allegations clearly state a cause of action for ordinary negligence against the Directors.  In the Motion, Defendants seek to immediately invoke the BJR <u>defense,</u> which would defeat discovery and development of FDIC-R's claims.[12]   This would be

---

[12] §607.0831, which Defendants urge the Court to apply to the Complaint in a vacuum, is Florida's codification of the BJR defense. *Aerospace Accessory Service, Inc. v. Abiseid*, 943 So.2d 866, 867 (Fla. 3d DCA 2006). Affirmative defenses are not applicable in motions to dismiss.  The BJR is a <u>defense</u>. *FSLIC v. Musacchio*, 695

inappropriate. "The Court initially must determine whether the business judgment rule applies by assessing whether there is evidence of bad faith." *Kloha v. Duda*, 1236 F.Supp.2d 1237, 1243, note 18. The applicability of the BJR is a question of fact. *In re Tousa, Inc*., 437 B.R. 447, 462-463 (S.D. Fla. 2010) (Where "directors have made an unintelligent or unadvised judgment, the protections of the business judgment rule do not apply"). Under Florida law, when acts of gross negligence, such as lack of good faith or conscious disregard of the best interests of the bank are committed, the BJR does not shield the directors. These facts have been well pled, and also require a factual inquiry.

The BJR protects directors from liability only once Defendants satisfy their duty to demonstrate its applicability. *Cottle v. Storer Commun'n, Inc.* 849 F. 2d 570, 575 (11th Cir. 1988) ("the [BJR] applies once the directors have satisfied their duty"). Questions at this stage as to whether Defendants made good faith business decisions in an informed and deliberate manner preclude any assumption that the BJR even applies. *In re Munford, Inc.*, 98 F.3d 604, 611 (11th Cir. 1996) (requiring that decisions be made "in an informed and deliberate manner"). *See also*, *FDIC v. Jackson*, 133 F. 3d 694, 700 (9th Cir. 1998) ("where the threshold requirements of rule are not met, however, a showing of simple negligence can be sufficient to impose liability on the director").

Many federal courts applying Florida law have decided against considering the BJR in the context of a motion to dismiss. *See, e.g. AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1376 (S.D. Fla. 1991) ("it is arguable that a court should not consider whether a defendant's conduct is protected by the business judgment rule on a motion to dismiss"); *FDIC v. Gonzalez-Gorrondona*, 833 F. Supp. 1545, 1561 (S.D. Fla. 1993) (quoting *Bomar*);

F. Supp. 1053, 1064 (N.D. Cal. 1988) (holding that a ruling on the applicability of the business judgment rule is peculiarly a question of fact, wholly inappropriate for consideration on a motion to dismiss).

*Talib v. Skyway Commc'n Holding Corp.*, 2005 WL 1610707, *6 (M.D. Fla. 2005) ("[i]t is … premature for the business judgment rule to be applied at this stage of the case, as discovery has not commenced"; …"[t]his Court chooses not to do so."); *In re Southeast Banking Corp.*, 827 F. Supp. 742 (S.D. Fla. 1993) (rev'd on other grounds), 69 F. 3d 1539 (11th Cir. 1995) ("[t]his Court agrees with the Magistrate Judge's recommendation and with the Plaintiff, that the fact-based Business Judgment Rule defense should not be considered on this motion to dismiss"). *Accord, Ad Hoc Committee of Equity Holders of Tectonic Network, Inc. v. Wolford*, 554 F. Supp. 2d 538, 556-567 (D. Del. 2008) (rejecting the use of the "[BJR] to trigger dismissal under Rule 12(b)(6)"). Pursuant to these authorities, the Court should decline to anticipate the BJR defense and deny the Motion, since the FDIC's well-pled allegations otherwise state a viable negligence claim.

**F.    FDIC-R Alleges Facts Sufficient to State a Claim Upon Which Relief May Be Granted Even If the BJR Were Applicable on Motion To Dismiss.**

First, it is important to note that Defendants have misstated, whether intentionally or not, the applicable standard of care required to sustain the Complaint – even if the BJR were applicable – by suggesting that to avoid application of the BJR, the FDIC must plead "willful misconduct" (Motion to Dismiss, fn. 10).[13] This is incorrect, and the Complaint alleges sufficient facts to overcome Defendants' argument that the BJR may at this stage bar FDIC-R's claims. *See* Motion, at 7, 9.

The BJR has been codified at §607.0831, Fla. Stat., which provides, in pertinent part:

---

[13] *See* §607.0831(b)(4), Fla. Stat, where "conscious disregard" appears as an <u>alternative</u> to willful misconduct (Note, the statutory language is separated by "or" and not by the mandatory "and"). *See In re Blackburn*, 209 B.R. 4, 7 (Bankr. M.D. Fla. 1997) (explaining "the starting point for Florida statutory construction purposes is the plain meaning of the words themselves").

(1) A director is not personally liable for monetary damages to the corporation or any other person for any statement, vote, decision, or failure to act, regarding corporate management or policy, by a director, unless:

(a) The director breached or failed to perform his or her duties as a director; and

(b) The director's breach of, or failure to perform, those duties constitutes:

[text intentionally omitted]

4. In a proceeding by or in the right of the corporation to procure a judgment in its favor or by or in the right of a shareholder, *conscious disregard for the best interest of the corporation*, **or** willful misconduct… [Emphasis added.][14]

The plain language of the statute provides that FDIC-R is not limited to willful misconduct, and may prove its case by proving conscious disregard for FCB's interests. The Complaint pleads this repeatedly. FDIC-R, which, as Receiver, asserts the rights of FCB, alleges that Defendants were conscious that their loan portfolio contained too high of a concentration of risky ADC and CRE loans. Further, they were repeatedly cautioned to more carefully monitor and adjust FCB's risk profile, improve its credit functions, and improve its loan standards; yet they failed to do so. Defendants' knowledge of these concerns by Regulators, and their conscious disregard of them, are well-pled. Despite their knowledge, FCB continued on a course of approving loans which were plainly discouraged and afflicted with deficiencies that rendered them an inordinate and irrational risk to the Bank.[15]

---

[14] Subsection (4) applies because FDIC-R is pursuing its claims against Defendants in the right of the failed institution. Thus, FDIC-R is not required to plead willful misconduct or the more onerous standard set forth in §607.0831(1)(b)(5) applicable to claims by third parties (usually creditors) against director defendants individually.

[15] See discussion of Arboretum loan at page 10, which violated Florida banking law prohibiting lending in excess of twenty-five percent (25%) of the bank's capital. Not a single dissent was leveled in opposition to this breach, which defies rationality. Given the fact that Arboretum alone accounted for nearly half of the $56 million loans identified as Loans in the Complaint, and construing the facts most favorable to the FDIC, the FDIC has surpassed any pleading burden to survive dismissal of its action.

In *Gorrondona*, 833 F. Supp. at 1561, the court, after expressing concern that a board member's invocation of the BJR in a motion to dismiss is arguably not appropriate, examined the allegations against the defendant directors, including "the failure to establish proper monitoring procedures, failure to supervise, [and] failure to review recommendations," finding "conduct which falls beyond the ambit of the protections of the business judgment rule." Accordingly, the court declined to dismiss the complaint on the basis of the BJR.

Similarly, in the earlier *Stahl* decision, 840 F. Supp. 124, 128 (S.D. Fla. 1993), plaintiffs alleged that bank examiners "criticized lending deficiencies, inadequate appraisals, inadequate loan underwriting, and unauthorized loans," and that "the Board of Directors, including certain of the named Defendants, *disregarded the regulatory criticism and failed to remedy the underwriting deficiencies*." (emphasis supplied). *Id.* at 125. While the court held that applying the BJR to the pending motions to dismiss "would be inappropriate," in passing, it opined that "even if the business judgment rule were to be applied at this stage, so as to exact a higher standard of pleading, FDIC's allegations in the Complaint are either exceptions to the business judgment rule or rise to the level of gross negligence."

Given that FDIC-R's allegations herein mirror those in *Gorrondona* and *Stahl,* they preclude application of the BJR, which should not, *as a matter of law*, be held to apply, nor to bar the negligence asserted against Defendants. *See also Stone v. Ritter*, 911 A. 2d 362 (Del. 2006) (describing oversight liability conditions to include situations where the directors have "implemented such a system or controls [but] consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention.").

### G.    Defendants' Authorities With Respect to the Application of a Rational Decision-Making Process are Inapposite to the Facts in this Case.

Defendants cite numerous inapposite cases in support of their argument that Plaintiff failed to state a claim for failure of oversight.   Defendants first cite *In Re Caremark Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996).   This case is inapposite because its procedural posture was not a motion to dismiss, but a motion requiring the court to weigh testimony and evidence on the discovery record.   *Caremark*, 698 A.2d at 962.   Here, in contrast, on a motion to dismiss, the Court does not consider matters outside the four corners of the Complaint, and must accept the well-pled allegations as true.

With regard to board failures, the *Caremark* court found, in *dicta*, a "very low probability" of liability based upon breaches of duty to monitor and supervise the company. It made this finding based upon review of discovery demonstrating "active involvement" by the company, through management and its board, to address the legal violations in issue.

In this case, in contrast, there is no discovery record as yet.   The Complaint alleges that there was <u>no</u> meaningful involvement by the Board to address: (1) the regulatory advice and warnings as to FCB's lending policies, or (2) the expansion of FCB's loan portfolio to high-risk, out of area loans and concomitant lack of an adequate loan department capable of underwriting its risky portfolio (Comp. ¶¶ 69-83).   Plaintiff further alleges that Defendants wholly failed to inform themselves of "relevant facts" such as the extent of the loan portfolio and the effect the loan portfolio potentially had to endanger the safety and soundness of the bank.   (Compl. ¶¶ 69-83).   *Caremark* is readily distinguishable and does not require dismissal. [16]

---

[16] There are additional key factual distinctions between *Caremark* and the case at bar.  In *Caremark*, the board members were unaware of any improper conduct; and in fact "appear[ed] to have been informed by experts that

Neither does *Rattner v. Bidzos*, 2003 WL 2228433 (Del. Ch. Sept. 30, 2003) compel dismissal on these facts. *Rattner* was an "accounting oversight" case involving failure to exercise proper supervision. *Id.* The court found that the amended complaint was "wanting of any facts regarding the Board's involvement in the preparation of the financial statements and the release of the financial information to the market". *Id.* at *12. In contrast to *Rattner*, here the complaint sets forth in meticulous detail the FCB board members' collective involvement in the approval of the seven Loans at issue and their awareness of loan information available to them at the time of approving the Loans, of borrower deficiencies at the time of approving the Loans, of FCB's own bank policies which they were charged with abiding by; and of regulatory warnings which they were charged with heeding.[17]

Any reliance on *Stone ex. Rel. AmSouth Bankcorporation v. Ritter*, 911 A.2d 362 (Del. 2006) is similarly misplaced. In *Stone*, the directors properly discharged their oversight responsibilities through, *inter alia*, AmSouth's system which allowed the board to "periodically monitor AmSouth's compliance with BSA and AML regulations" and that the board itself "at various times enacted written policies and procedures designed to ensure compliance with the BSA and AML regulations." *Id.* at 372. Defendants, however, did not

---

the company's practices, while contestable, were lawful." *Caremark*, at 971. Here, as alleged in the Complaint, the opposite occurred. The Board members were aware of FCB's weak underwriting practices and procedures and received criticism by regulators, but did not do anything about it. Also, the *Caremark* court found "a functioning committee charged with overseeing corporate compliance." *Caremark*, at 970. Here, FCB had no such oversight mechanism. Thus, even if Delaware law (which is more protective of directors than the Florida decisions cited herein) were applicable here, the FCB Board would not receive the protection of an adequate system in place, and Defendants' motion to dismiss should be denied.

[17] The *Rattner* court found "the possibly onerous elevation in a single financial statistic" to be an insufficient "red flag". *Rattner*, 2003 WL 22284323, at *13. In contrast, here, the allegations of the Complaint contain well-pled and particularized red flags from regulators, including warnings in 2006, 2007, and 2009 and a subsequent cease and desist order. (Comp., ¶¶ 41-42). Yet, despite these, FCB still failed, resulting in this action. Defendants' reliance upon *Guttman v. Huang*, 829 A.2d 492 (Del. 2003) is likewise unavailing, because that decision also turns upon a lack of notice to the board of accounting irregularities which they ignored, not upon their direct and particularized involvement in the individual loan approval process.

seek to "periodically monitor [its] compliance" with regulatory warnings, and in fact disregarded them. Far from "enacting written policies and procedures" to ensure compliance with its own loan policies, Defendants approved numerous loans identified in the complaint which openly flouted the bank's policies.

This case is similarly distinguishable from *Resolution Trust Corp. v. Blasdell*, 930 F. Supp. 417 (D. Ariz. 1994), both in posture and in facts. That decision arose from a motion for summary judgment. Key to granting of the motion was the <u>record evidence</u> available to the court, specifically evidence that the directors considered relevant materials, and that the regulators' concerns were both addressed and in many cases remedied.[18] *Id.,* at 427. Here, the FDIC pleads the opposite factual scenario; namely, that regulators' concerns were disregarded and not remedied, and that Defendants did not make informed decisions. (e.g., Compl, ¶81: "Defendants, individually and collectively, made uninformed decisions without meaningful deliberation and disregarded advice and warnings from Regulators designed to assist them in their decision making."). Since the Court must accept Plaintiff's well-pled factual allegations as true at this stage, Defendants' Motion should be denied.

## III.   CONCLUSION

The Complaint's well-pleaded allegations contain sufficient statements of fact, which must be taken as true and in the light most favorable to the FDIC-R, to state a plausible claim upon which relief may be granted. For the reasons set forth above, in accordance with the above-cited authorities, Defendants' Motion to Dismiss the Complaint should be denied.

---

[18] Based on the same reasoning, *Washington Bancorporation v. Said*, 812 F. Supp. 1256, 1269-70 (D.D.C. 1993) is inapposite. There, under Rule 56, the court found the record evidence insufficient to overcome the presumptions of the business judgment rule related to gross negligence claims against directors. Here, given that the FDIC has made allegations rebutting the presumption with regard to, *inter alia*, the Board failing to adequately inform themselves and failing to act upon such information, "a Rule 12(b)(6) dismissal is inappropriate." *Id.* at 1269.

## FDIC-R'S OBJECTION TO HEARSAY/ EXTRANEOUS
## MATERIALS ATTACHED TO MOTION TO DISMISS

FDIC-R objects to Defendants' (1) inclusion of hearsay by way of newspaper articles; and (2) their use of Exhibits A through D, the Reports Of Examination ("ROE") and the Loan Policies Manual, at this stage of the case, on the following grounds:

**I.       The Newspaper Articles Violate the Hearsay and Judicial Notice Rules**

Defendants cite two newspaper articles in support of the Motion: "*The Recession Report: South Florida Area Among Hardest Hit by Recession*", <u>Miami Herald</u>, June 26, 2010; and "*Little Alarm Shown at Dawn of Housing Bust*," <u>Wall Street Journal</u>, January 13, 2012, to argue that the collapse of the real estate market, and not the Defendants' negligence and gross negligence, was the cause of FCB's failure. These articles are hearsay. Their inclusion at this stage is prejudicial.

The reference to newspaper articles in evaluating the sufficiency of the complaint violates FRE 802 and seeks to introduce a weighing of evidence at the motion to dismiss stage. It is the allegations of the Complaint that are to be taken as true, not newspaper articles that Plaintiff cannot cross-examine. Additionally, if the articles were offered for judicial notice, FRE 201(e), which allows FDIC-R an opportunity to be heard concerning their admission, has not been satisfied.  The articles, and all mention of them, should be stricken from the Motion.

**II.      The Reports of Examination (ROEs) and Loan Policies Manual Are Not Dispositive of the Plaintiff's Causes of Action.**

**A.  The *Brooks* Analysis is Not Applicable to These Facts.**

Defendants argue that they are entitled to submit for the Court's consideration the entire text of the Reports of Examination issued by the FDIC and the Florida Department of

Financial Regulation for the years ending 2006, 2007, and 2008, as well as FCB's 2009 Loan Policies Manual. They cite *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997) for the proposition that Exhibits A through D are referred to in the Complaint, and are therefore "central" to Plaintiff's claim.[19]

Defendants' reliance on *Brooks* is misplaced. *Brooks* involved motions to dismiss and for summary judgment in a class action alleging that the Defendants' health plans were <u>group</u> plans. Defendants attached the plaintiff's health insurance policies to their motions to dismiss. The health insurance plans, however, were facially <u>not group plans</u>, but were, instead, <u>individual</u> plans, which were not addressed by the statute allegedly violated. In *Brooks,* the plans' language showed on its face the inapplicability of the statute. No such question confronts the Court in this case. While the ROE's may later play a role in FDIC-R's proof of its case, including multiple warnings of perils which FDIC-R alleges were consciously disregarded by Defendants, they do not on their faces contain any dispositive legal bases for dismissal, such as in *Brooks.*

Similarly, in *Gayou v. Celebrity Cruises, Inc.*, 2012 WL 2049431 (S.D. Fla. 2012), the issue was whether a company that operated an aerial rope-slide "zip-line" featured in the cruise line's excursions package was the actual agent of the cruise line, rendering it liable for injuries sustained by the plaintiff when the brakes on the zip-line failed. In ruling on the motion to dismiss on the actual agency theory, the court considered the contract between Celebrity and the zip-lining excursion company, which was attached to Celebrity's motion to

---

[19] *Harris v. Ivax Corp.*, 182 F.3d 799, 802, n. 2 (11th Cir. 1999) dropped the requirement that the documents submitted with a motion to dismiss be referred to in the complaint, and instead substituted the standard that the documents be central to the complaint, provided that its contents are not in dispute.

dismiss.   The contract, on its face, "definitively show[ed] no actual agency relationship between the signatories." *Id.* at *9.

In these cases, the extrinsic documentation attached facially established the non-existence of the legal basis for the defendants' purported liability.   In contrast, here Defendants only submit documentary evidence to counter the well-pled factual allegations of the Complaint with additional facts and opinions.   They "cherry pick" certain facts and ignore other facts clearly evidencing negligence and gross negligence, such as Defendants' repeated ignoring of multiple warnings of the danger in which their practices and omissions were placing the institution.

Just as importantly, the ROEs are not the *only* evidence bearing on the Defendants' negligence and gross negligence. In any event, however, they cannot be read as facially dispositive of the entire case. To hold otherwise would allow every piece of potential evidence into consideration on a motion to dismiss by claiming it is "central" to plaintiff's case.   A motion to dismiss is not meant to supplant an evidentiary hearing where evidence is weighed. *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir.2009) ([t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted).

### B. The Reports of Examination Are Fact Intensive and Require Testimony to Properly Analyze and Weigh Their Findings and Conclusions.

Unlike the *Brooks* and *Gayou* scenarios, the ROEs are not straightforward contracts which facially refute the Plaintiff's claims.   They are lengthy reports of examinations conducted over a period of time by banking experts.   For each "positive" statement that Defendants may cull from an ROE, Plaintiff can point to multiple negative statements and

criticisms of FCB's operations, and, on balance, the ROEs corroborate the allegations of the Complaint. By submitting these reports with their Motion, Defendants are asking this Court to go far beyond a review of a document which is dispositive of the issue of liability. Rather, they ask this Court, without the benefit of testimony of FDIC and/or FOFR regulators and experts regarding the nature, purpose and scope of the examinations, to decide that the ROEs completely vindicate Defendants and render the lawsuit against them unsustainable. This is improper because they present triable issues of fact, not suitable for adjudication by motion to dismiss. The kind of evaluation of the evidence contained in the ROEs is not consistent with the limited inquiry which is the purview of the court when deciding whether or not to grant or deny a motion to dismiss. *See Smith.*

### C. Exhibit D, the 2009 Loan Policies Manual, Does Not Defeat, And In Fact Supports, Plaintiff's Claims.

The Complaint alleges that a Cease and Desist Order was issued on October 7, 2008 as a result of conduct that was the subject of consistent, repeated and substantial regulatory criticisms. Defendants' submission of the 2009 Loan Policies Manual does not clear them. It can be inferred that Defendants did not have an adequate Loan Policies Manual before 2009. As is true of the ROEs, at the very least, an issue of fact exists, because the 2009 Loan Policies Manual does not facially disprove, and is not dispositive of, Plaintiff's claims.

For these reasons, the Court should not dismiss the Complaint based on the newspaper articles or Exhibits A through D to the Complaint.

Dated:  July 27, 2012

Respectfully submitted,                              /s/ Carlos de Zayas

Carlos de Zayas, Esq.
Florida Bar No. 198617
E-mail address:  cdz@lydeckerdiaz.com
Carla M. Barrow, Esq.
Florida Bar No. 797227
E-mail address:  cmb@lydeckerdiaz.com
LYDECKER, DIAZ, LLC
1221 Brickell Avenue, 19th Floor
Miami, Florida 33131
Telephone Number:  (305) 416-3180
Facsimile Number:  (305) 416-3190

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 27, 2012, I electronically field the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the individuals listed on the Service List.

/s/ Carlos de Zayas
CARLOS de ZAYAS

## Service List

Kelley Geraghty Price, Esq.
Florida Bar No. 889539
E-mail address:  kprice@cohenlaw.com
COHEN & GRIGSBY, P.C.
9110 Strada Place
Mercato- Suite 6200
Naples, Florida 34108
Telephone Number:  (239) 390-1913
Facsimile Number:  (239) 390-1901

Mary C. Gill, Esq. admitted *pro hac vice*
Georgia Bar No. 294776
E-mail address:  Mary.Gill@alston.com
Austin M. Hall, Esq. admitted *pro hac vice*
Georgia Bar No. 310751
E-mail address:  Austin.Hall@alston.com
ALSTON & BIRD, LLP
1201 W. Peachtree Street
One Atlantic Center
Atlanta, Georgia 30309
Telephone Number:  (404) 881-7276
Facsimile Number:  (404) 881-7777